*297 F. Supp. 1125*

**FILED**

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

NOV 24 1968

JUDICIAL PANEL FOR
MULTIDISTRICT LITIGATION
PER
PROVISIONAL CLERK

IN RE MULTIDISTRICT PRIVATE CIVIL )
TREBLE DAMAGE ANTITRUST LITIGATION)    DOCKET NO. 12
INVOLVING CONCRETE PIPE              )

OPINION AND ORDER DENYING REQUEST TO TRANSFER
ACTION UNDER 28 U.S.C. §1407 TO THE  CENTRAL
DISTRICT OF  CALIFORNIA

———————————

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

———————————

PER CURIAM

On October 14, 1968 certain plaintiffs in actions then
pending in the Eastern District of Pennsylvania and the
Southern District of New York filed a motion with the Panel
requesting the transfer of twenty-three cases to the Eastern
District of Pennsylvania for consolidated or coordinated
pretrial proceedings pursuant to 28 U.S.C. §1407.  When
this matter was set for hearing, we included four additional
cases for consideration for transfer to the Eastern District
of Pennsylvania or to another district or districts.  One of
these additional cases, *State of New Mexico, et al. v.
American Pipe & Construction Co., et al.,* is presently
pending in the District of New Mexico.

- 2 -

Prior to the hearing, all parties in this case, with one exception, filed a joint motion to transfer it to an appropriate west coast court and to assign it to the Honorable Martin Pence for pretrial purposes.[1/]  Even assuming, as the parties *now* urge, that the claims in this case arise from the alleged *west of the Rockies conspiracy* and that some of the factual issues present in it are common to the Ninth Circuit cases, we decline to order such a transfer.  In view of the fact that pretrial proceedings are nearly complete in the Ninth Circuit cases, we do not believe that transfer of *The State of New Mexico case* at this time will promote the just and efficient conduct of these actions.

IT IS THEREFORE ORDERED that the motion to transfer this case to the Central District of California and to assign it to the Honorable Martin Pence for pretrial proceedings be and the same is hereby denied.

[1/] At the hearing, counsel suggested that the case be transferred to the Central District of California.

*302  F. Supp. 244*

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
**FILED**

MAY 2 3 1969

PATRICIA D. WILL
CLERK



THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE "EAST OF THE ROCKIES" CONCRETE )
PIPE ANTITRUST CASES                    )          DOCKET NO. 12

OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
WILLIAM H. BECKER, JOSEPH S. LORD, III, EDWIN A. ROBSON,
STANLEY A. WEIGEL, AND EDWARD WEINFELD, JUDGES OF THE PANEL

---

WILLIAM H. BECKER, JUDGE OF THE PANEL

### General Factual Background

Certain plaintiffs and intervening plaintiffs, in civil
treble damage antitrust actions pending in the United States
District Courts for the Eastern District of Pennsylvania and the
Southern District  of New York, have moved for transfer under
Section 1407, Title 28, U.S.C., to the Eastern District of Penn-
sylvania of the civil actions listed in the attached Schedule A.
On the initiative of the Panel an order was issued to the parties
to show cause why the civil actions listed in the attached Sched-
ule B should not be transferred under Section 1407.  The product
involved in each of those actions is described generally as con-
crete pipe.

The filing of each of the affected actions followed the return in the District of New Jersey of two criminal indictments charging violations of the antitrust laws.  These criminal actions, in that district, were given the numbers Cr. No. 9-66 and Cr. No. 10-66.  (None of the affected civil actions were filed in the District of New Jersey.)  The defendants in these criminal actions were convicted on pleas of <u>nolo contendere</u>.

Some of the plaintiffs in the affected civil actions are end-users of concrete pipe and some are competitors of one or more of the defendants.

The indictment in Cr. No. 9-66 described the defendants, their states of incorporation, principal place of business  and short descriptive names as follows:

| Name of Corporation | State of Incorporation | Principal Place of Business | Hereinafter Referred to as |
|---|---|---|---|
| International Pipe and Ceramics Corporation | Delaware | East Orange New Jersey | Interpace |
| Lock Joint Pipe Company | New Jersey | East Orange New Jersey | Lock Joint |
| Kerr Concrete Pipe Company | New Jersey | Paterson New Jersey | Kerr |
| Martin Marietta Corporation | Maryland | New York New York | Martin Marietta |
| North Jersey Concrete Pipe Co. Inc. | New Jersey | Irvington New Jersey | North Jersey |

Interpace is the successor to the concrete pipe business formerly carried on by Lock Joint.  Martin Marietta is the successor to the

concrete pipe business formerly carried on by the Martin Company, a Maryland corporation, and by American-Marietta, an Illinois corporation, which merged in October 1961 to form Martin Marietta Corporation.

The product "concrete pipe" was defined, in the indictment in Cr. No. 9-66, to mean non-pressure pipe constructed of concrete, either with or without metal components, to convey water or sewage.   The metal components were defined, in the same indictment, to mean steel rods, wire and mesh used in the manufacture of concrete pipe.   The indictment charges that cement and metal components account for 80% of the cost of raw materials used in the manufacture of concrete pipe; that the metal components are the most costly ingredients; that over 75% of the cement and metal components were produced outside of New Jersey.   In this indictment the defendants and their predecessors are charged with an unlawful conspiracy in restraint of interstate trade and commerce (in violation of Section 1, Title 15, U.S.C.) beginning in August 1960, and continuing thereafter until at least April 1962.   This indictment further charged the alleged conspirators, including other individuals not named as formal defendants, with the following unlawful acts:

(a)   submission of collusive non-competitive prices for the sale of concrete pipe in Northern New Jersey:

-3-

(b)   allocation and division of orders of concrete pipe in Northern New Jersey among Martin Marietta, Kerr, North Jersey and Lock Joint; and

(c)   increasing fixing and stabilizing prices at which concrete pipe was sold in Northern New Jersey.

In Cr. No. 10-66 only Interpace, Lock Joint and Martin Marietta were named as corporate defendants.  The product involved in that indictment was "concrete pipe" defined as low pressure and non-pressure pipe (constructed of concrete and metal components, having rubber gaskets and steel ring joints) and low pressure concrete pipe having concrete joints and rubber gaskets.  This "concrete pipe", the indictment charges, was used to convey water, primarily for drinking and irrigation purposes, and sewage for sanitation and similar purposes.  The time period of the alleged conspiracy, charged in Cr. No. 10-66, began in 1955 and continued at least until 1962.  The unlawful overt acts alleged to have been committed by the conspirators are similar to those alleged in Cr. No. 9-66, supra.

In Cr. No. 10-66 the territory, in which the conspiracy was alleged to be designed to be effective, was the "Eastern United States" defined as all states lying east of the Rocky Mountains (except Texas, Louisiana, and Mississippi), hence the description in the title "East of the Rockies."[1]

-4-

The indictment in Cr. No. 10-66 further alleged that,
during the period involved, Lock Joint (predecessor of Interpace)
and Martin Marietta were the principal manufacturers of concrete
pipe in the eastern United States; that Lock Joint then had plants
in New Jersey, New York, Connecticut, Maryland, South Carolina,
Florida, Michigan, Illinois, Missouri, Oklahoma, Kansas, Colorado,
Wyoming  and Ohio; that Martin Marietta then had plants for the
manufacture of concrete pipe in the following states:  Alabama,
Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland,
Michigan, Missouri, New Jersey, New York, Pennsylvania and
Tennessee.

At the time the motion to transfer these cases under Sec-
tion 1407 was filed there were more affected civil actions (13)
filed in the Northern District of Illinois than in any other dis-
trict; but there were far more plaintiffs in the 6 cases in the
Eastern District of Pennsylvania.[2]  Nevertheless counsel for the
plaintiffs in the Northern District of Illinois, and others, con-
cede that the Eastern District of Pennsylvania is the logical
transferee district.  In view of the number of plaintiffs in the
eastern United States, and the number of plaintiffs in the actions
in the Eastern District of Pennsylvania, counsel for the plain-
tiffs in the Western District of Missouri agree that the Eastern
District of Pennsylvania is the logical transferee district.  And
as stated hereinabove, counsel for the moving plaintiffs in actions

-5-

in the Southern District of New York also agree that the Eastern District of Pennsylvania is the logical transferee district, if the actions are to be transferred elsewhere.

Before creation of this Panel, the Co-Ordinating Committee for Multiple Litigation, with concerned trial judges, conducted hearings at Philadelphia and Chicago, as a result of which preliminary coordinated discovery was recommended to explore the existence of the relation between the cases in the several districts. Under the orders of the Honorable John Morgan Davis, United States District Judge of the Eastern District of Pennsylvania, to whom all the cases in that district have been assigned, these recommendations have been implemented and discovery is current. In some of the other districts, this discovery has been wholly or partially accomplished.

In the affected civil actions in the Eastern District of Pennsylvania and in the Southern District of New York conflicting class action requests have been sought. With one dissenting opinion a class action issue in the Southern District of New York has been determined adversely to the City of New York by interlocutory decision of the district court and of a Panel of the Second Circuit Court of Appeals, No. 32555, decided April 10, 1969 (C.A. 2) _____ F.2d _____ (not yet reported).

## The Common Questions of Fact

These actions involve many common questions of fact. All

-6-

are based on the two criminal indictments in the District of New
Jersey, one of which charged a conspiracy effective in most of
the states and concerned districts east of the Rockies.  The
other indictment charged a conspiracy effective in the Northern
District of New Jersey.  It is true that different products are
designated in the two indictments.  But these differences do not
render the proposed transfers improper.  They may or may not af-
fect the manner in which the transferee court conducts the pre-
trial proceedings.  In re Plumbing Fixture Cases, Docket No. 3,
Judicial Panel on Multidistrict Litigation, 295 F.Supp. 33.

The complaints in all the affected actions contain al-
legations similar to those in the indictments mentioned above.
Although some of the complaints involve additional years and
additional allegations not found in the indictments with respect
to pressure pipe (said to be manufactured only by Interpace) and
with respect to a violation of Section 2, Title 15, U.S.C., never-
theless the common conspiratorial questions of fact respecting
price fixing, allocation of orders and collusive bidding, among
others, remain.

Furthermore, in addition to these common conspiratorial
questions of fact there are many more common questions of fact in
the affected civil actions.  The additional common questions of
fact include, among others, the following:

(1)  question of fraudulent concealment,
necessary to toll the statute of limitations;

-7-

(2)   the several factual questions under
Rule 23, F.R.Civ.P., which must be resolved to
determine the propriety of the many and con-
flicting class action requests; and

(3)   the many economic questions of fact
affecting prices in the absence of conspiracy;
including, for example, methods of manufacture,
prices of steel products and cement used as com-
ponents, and production costs, none of which are
unique local market questions.

Counsel for the defendants, opposing transfer, argue that
the criminal indictments are limited in their averments of time
periods, parties, products, geographic markets and conspiracy
allegations, and are not as broad as the complaints in the civil
actions.  One answer to these arguments is that the plaintiffs
are not limited in their bases of civil actions by the particular
averments of the indictments.

Treble damage antitrust actions may be maintained without
an indictment and without conviction or other government pro-
ceeding.  A fortiori, when there has been a government action,
private treble damage civil plaintiffs are entitled to the
statutory remedial assistance of the government action [such as
the tolling of limitations under Section 5(b)] despite difference
in time periods, conspiratorial details and parties, provided

-8-

there is substantial identity of subject matter.  There is such
identity when the private complaint is based in whole or in part
on any matter complained of in the government action.  Section 16,
Title 15, U.S.C.  Leh v. General Petroleum Corp., 382 U.S. 54, 86
S.Ct. 203, 15 L.Ed.2d 134, l.c. 138; Minnesota Mining & Mfg. Co.
v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473,
14 L.Ed.2d 405.  Cf. State of Michigan v. Morton Salt Co., 259
F.Supp. 35, l.c. 55, affirmed sub. nom. Hardy Salt Co. v. State
of Illinois (C.A. 8) 377 F.2d 768, cert. den. 389 U.S. 912, 88
S.Ct. 238, 19 L.Ed.2d 260.  In the Leh case, supra, the Supreme
Court expressly approved the "substantial identity of subject
matter" rule announced in Union Carbide & Carbon Corp. v. Nisley
(C.A. 10) 300 F.2d 561, l.c. 670, app. dism. sub. nom. Wade v.
Union Carbide & Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.
2d 46, and rejected the narrow rule of Steiner v. 20th Century-
Fox Film Corp. (C.A. 9) 232 F.2d 190.  The rule of the Leh case
shows that the argument of defendants in these cases is not rele-
vant and not sound.

In light of the Leh case it would be inappropriate to
sustain the defendants in their technical view that differences
between the underlying indictments and the civil complaints in
respect to geographic areas in which the conspiracy is operative,
and in respect to time periods, conspiratorial details and parties,
somehow militate against transfer under Section 1407.  Genuine

-9-

common questions of fact do not depend upon the limits or breadth
of the indictments or convictions in any case.

Defendants urge that there are no common questions of fact
in these cases because there are only local markets for delivery
of concrete pipe, since the pipe can economically be delivered
only a few miles beyond the point of manufacture.  Assuming this
to be true, the two major defendants, according to the indictments,
found this to be no barrier to multi-state organization of its in-
dustrial activity in producing, selling and delivering the pipe to
many "local markets".  Further, in the view of the government, the
major defendants found the delivery problem no barrier to multi-
state conspiratorial activities affecting a great number of local
markets.[3]  The defendants in the criminal actions, by pleading
nolo contendere, chose not to challenge this view of the government
by trial on the factual issues.  The plaintiffs in the civil actions
have the right to raise similar questions of fact.

As  in many of the instances of multi-district litigation,
"small defendants" oppose transfer of actions in which they are de-
fendants on special grounds of alleged excessive costs.  It is by
no means clear that the small defendants' interest of overall costs
would be served by denying transfer of the claims for relief against
them.  It is clear, however, that the transferee court can exercise
its discretion in scheduling pretrial proceedings in a manner which
will protect the legitimate interests of small defendants in the costs

of litigation.  Cf. <u>In re Plumbing Fixture Cases</u>, <u>supra</u>, 295 F.Supp.
at page 34.

Except in respect to the New Mexico action, it is found
that transfer of these affected actions to the Eastern District of
Pennsylvania for consolidated or coordinated pretrial proceedings
will be for the convenience of parties and witnesses and will pro-
mote the just and efficient conduct of such actions.

### The New York Class Action Question

As stated above, in the affected actions pending in the
Southern District of New York, the district court has ruled ad-
versely on a request for an interlocutory class action determina-
tion.  A panel of the Second Circuit Court of Appeals has, by a
divided vote, held this interlocutory determination unappealable.
Until these class action issues are no longer subject to early ap-
pellate review in the Second Circuit and no longer subject to re-
view by extraordinary writ or by certiorari, ruling on the motion
of transfer of these cases pending in the Southern District of New
York should be deferred.  So action will be stayed in those cases
until further order of the Panel.  At an appropriate time the multi-
district class action conflicts should be given special consideration
by the Panel.  Cf. <u>In re Multidistrict Private Civil Treble Damage
Litigation Involving Plumbing Fixtures</u>, Docket No. 3, Judicial Panel
on Multidistrict Litigation, _____ F.Supp. _____ (filed December
27, 1968).

### The New Mexico Case

Because counsel agree that the New Mexico case is not a part of the alleged "East of the Rockies" conspiracy, transfer of that case should be denied.

### The Colorado Cases

The affected actions in the District of Colorado differ in some respects from the other cases, but many common questions of fact remain.  Those cases should be transferred because there are many common questions of fact in those cases and the remaining affected cases.  Transfer should not be denied because there are additional questions of fact in the Colorado cases.

The Honorable John Morgan Davis is willing to accept transfer of any of the affected civil actions pending in districts other than the Eastern District of Pennsylvania.  The United States District Court for the Eastern District of Pennsylvania has consented to the transfer of any of the affected civil actions and the assignment of any of the actions to Judge Davis, as shown by the consent attached hereto signed by Chief Judge John W. Lord, Jr., for that Court.

For the foregoing reasons, it is hereby

ORDERED that all civil actions listed in the attached Schedules A and B except those pending in the District of New Mexico and in the Southern District of New York be, and they are hereby,

-12-

transferred to the Eastern District of Pennsylvania pursuant to
Section 1407, Title 28, U.S.C., and assigned to the Honorable John
Morgan Davis, United States District Judge.  It is further

ORDERED that transfer under Section 1407, Title 28, U.S.C.,
of the civil action pending in the District of New Mexico, listed
in Schedule B attached, be, and it is hereby, denied.  It is
further

ORDERED that ruling on the transfer under Section 1407,
Title 28, U.S.C., of the civil actions pending in the Southern Dis-
trict of New York, listed in Schedule A attached, be, and it is
hereby, stayed until further order of the Panel.

## MARGINAL NOTES

1. A similar indictment alleging a similar conspiracy in ten
   states "West of the Rockies" led to the filing of similar
   multidistrict litigation in the Ninth Circuit and others.
   On the recommendation of the Co-Ordinating Committee for
   Multiple Litigation, pretrial proceedings in these "West
   of the Rockies" cases in the Ninth Circuit were coordi-
   nated (before Section 1407 was enacted).  This coordina-
   tion was managed by the Honorable Martin Pence, Chief Judge
   of the United States District Court for Hawaii.  For this
   purpose, Judge Pence was assigned, by the Honorable Richard
   H. Chambers, Chief Judge of the Ninth Circuit Court of Ap-
   peals, to all districts in which these cases were pending.
   Practically all of the "West of the Rockies" multidistrict
   litigation has been efficiently terminated as a result of
   this coordination under the judicial supervision of Judge
   Pence (with the assistance of the Honorable George H. Boldt,
   Judge of the United States District Court for the Western
   District of Washington).  In coordinating the pretrial pro-
   cedures Judge Pence and Judge Boldt employed a great many
   of the procedures recommended by the Co-Ordinating Committee
   for Multiple Litigation, including central document deposi-
   tories.  These procedures are described in the Manual for
   Complex and Multidistrict Litigation.

2. See schedule of plaintiff movants attached.

3. If there is, as claimed by plaintiffs, an overall unlawful
   multi-state conspiracy affecting a large number of local mar-
   kets, in which small local producers join, each small local
   producer is responsible for the conspiratorial activities
   of all on the basis of agency. McCandless v. Furlaud, 296
   U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121; Standard Oil Co. of
   Cal. v. Moore (C.A. 9) 251 F.2d 188, cert. den. 356 U.S.
   975, 78 S.Ct. 1139, 2 L.Ed.2d 1148.  Local markets and local
   conspiracies are not synonymous.

-14-

SCHEDULE A

EASTERN DISTRICT OF PENNSYLVANIA

1. City of Philadelphia, et al. v. International     Civil Action
   Pipe & Ceramics Corp., et al.     No. 43008

2. Board of County Road Commissioners of the     Civil Action
   County of Wayne & City of Detroit v.     No. 43528
   International Pipe & Ceramics Corp.,
   et al.

3. City of Akron, City of Cleveland and     Civil Action
   County of Summit v. International Pipe     No. 44421
   & Ceramics Corp., et al.

4. City of Rochester, County of Erie and     Civil Action
   City of Buffalo v. International Pipe     No. 68-1212
   & Ceramics Corp., et al.

5. State of Alaska v. International Pipe &     Civil Action
   Ceramics Corp., et al.     No. 68-154

6. Ocean Leasing Corp., et al. v. International     Civil Action
   Pipe & Ceramics Corp., et al.     No. 68-1211

NORTHERN DISTRICT OF ILLINOIS

7. Metropolitan Sanitary District of Greater     Civil Action
   Chicago, etc., et al. v. Martin Marietta     No. 67 C 634
   Corp., et al.

8. City of Harvey, Illinois, et al. v. Martin     Civil Action
   Marietta Corp., et al.     No. 67 C 711

9. Metropolitan St. Louis Sewer District v.     Civil Action
   Martin Marietta Corp., et al.     No. 67 C 712

10. Village of Hinsdale, Illinois v. Martin     Civil Action
    Marietta Corp., et al.     No. 67 C 2165

11. City of Gary, Indiana v. Martin Marietta     Civil Action
    Corp., et al.     No. 67 C 2164

12. Sanitary District of the City of Gary,     Civil Action
    Indiana v. Martin Marietta Corp., et al.     No. 67 C 2166

13. The County of Cook v. Martin Marietta     Civil Action
    Corp., et al.     No. 67 C 706

- 2 -

NORTHERN DISTRICT OF ILLINOIS (CONTINUED)

14. Louisville and Jefferson County Metropolitan
    Sewer District v. Martin Marietta Corp.,
    et al.

    Civil Action
    No. 67 C 713

15. Dover Construction Co., et al. v. Martin
    Marietta Corp., et al.

    Civil Action
    No. 67 C 703

16. Nathan Yorke, assignee, etc. v. Martin
    Marietta Corp., et al.

    Civil Action
    No. 67 C 704

17. State of Connecticut v. Martin Marietta
    Corp., et al. & International Pipe &
    Ceramics Corp., et al.

    Civil Action
    No. 67 C 1132

18. State of New Jersey v. Martin Marietta
    Corp., et al.

    Civil Action
    No. 67 C 1563

19. Washington Suburban Sanitary Commission
    v. Martin Marietta Corp., et al.

    Civil Action
    No. 67 C 1451

SOUTHERN DISTRICT OF NEW YORK

20. State of New York v. International Pipe &
    Ceramics Corp., et al.

    Civil Action
    No. 67 Civ. 1642

21. The City of New York, etc. v. International
    Pipe & Ceramics Corp., et al.

    Civil Action
    No. 67 Civ. 1698

DISTRICT OF MARYLAND

22. The Mayor and City Council of Baltimore
    v. Martin Marietta Corp., et al.

    Civil Action
    No. 18964

23. Baltimore County, Maryland v. Martin
    Marietta Corp., et al.

    Civil Action
    No. 18965

24. State of Maryland v. Martin Marietta
    Corp., et al.

    Civil Action
    No. 19110

25. Anne Arundel County, Maryland v. Martin
    Marietta Corp., et al.

    Civil Action
    No. 19834

26. County Commissioners for Cecil County,
    Maryland v. Martin Marietta Corp., et al.

    Civil Action
    No. 19833

- 3 -

DISTRICT OF MARYLAND (CONTINUED)

27. Montgomery County, Maryland v. Martin Marietta     Civil Action
       Corp., et al.                                    No. 19835


WESTERN DISTRICT OF MISSOURI

28. Kansas City, Missouri v. Martin Marietta           Civil Action
       Corp., et al.                                    No. 16458-4

29. Udell-Niles Concrete Products Co. v.                Civil Action
       Marietta Corp., et al.                           No. 16504-2

SCHEDULE B


EASTERN DISTRICT OF KENTUCKY

1.  Commonwealth of Kentucky, et al. v. Martin          Civil Action
        Marietta Corp., et al.                          No. 296


DISTRICT OF COLORADO

2.  City and County of Denver v. International          Civil Action
        Pipe and Ceramics Corp.                         No. 67 C 630

3.  Coppco, Inc. v. International Pipe and              Civil Action
        Ceramics Corp.                                  No. 67 C 472


DISTRICT OF NEW MEXICO

4.  State of New Mexico, et al., v. American            Civil Action
        Pipe and Construction Co., et al.               No. 7183

<u>SCHEDULE OF MOVANT PLAINTIFFS</u>

I.   Plaintiffs and Intervenor Plaintiffs in
     Actions Pending in the Eastern District
     <u>of Pennsylvania</u>

City of Philadelphia, School District of Philadelphia,
Allegheny County Sanitary Authority and Allegheny
County v. International Pipe and Ceramics Corporation,
et al., Civil Action No. 43008
City of Pittsburgh
Commonwealth of Pennsylvania

Board of County Road Commissioners of the County of
Wayne and City of Detroit v. International Pipe and
Ceramics Corporation, et al., Civil Action No. 43528
State of Michigan
City of Madison Heights

City of Akron, City of Cleveland and County of Summit
v. International Pipe and Ceramics Corporation, et al.,
Civil Action No. 44421
State of Ohio

State of Alaska v. International Pipe and Ceramics
Corporation, et al., Civil Action No. 68-154
State of Alaska

Ocean Leasing Corporation and those plaintiffs listed
on Exhibit "A" v. International Pipe and Ceramics
Corporation, et al., Civil Action No. 68-1211
American Apartments, Inc.
Amherst Leasing Corp.
Annapolis Leasing Corp.
Arcadia Leasing Corp.
Argentine Leasing Co.
Atlantis Leasing Corp.

Bel-Air Leasing Corp.
Belt Parkway Construc-
tion Corp.
Birch Leasing Corp.
Brazilia Leasing Co.
Buick Leasing Corp.
Cadillac Leasing Corp.
Cambridge Leasing Corp.
Canada Leasing Corp.
Carolina Gardens, Inc.
Citadel Leasing Corp.
Colgate Leasing Corp.
Colombia Leasing Co.
Copenhagen Leasing Corp.
Cornell Leasing Corp.
Country Leasing Corp
Dakota Leasing Co.
Danbury Leasing Corp.
Darthmouth Leasing Corp.
The Lefrak Organization,
Inc. d/b/a Delaware
Leasing Co.
District Leasing Corp.
Dodge Leasing Corp.
Dover Leasing Corp.
Earth Leasing Corp.
Elm Leasing Corp.
Ford Leasing Corp.
Forest Hills Leasing Corp.
Garden Leasing Corp.
Georgetown Leasing Corp.
Grand Leasing Co.
Greenwich Leasing Corp.
Hampton Leasing Corp.
Hartford Leasing Corp.
Harvard Leasing Corp.
Hollywood Leasing Corp.
Illinois Leasing Co.
Indiana Leasing Co.
International Leasing Corp.
Iowa Leasing Co.
Kansas Leasing Corp.

Kentucky Leasing Co.
LaFrance Leasing Corp.
Lincoln Leasing Corp.
London Leasing Corp.
Maple Leasing Corp.
Massachusetts Leasing Co.
Mexico Leasing Corp.
Minnesota Leasing Corp.
Missouri Leasing Co.
Montauk Leasing Corp.
Nautilus Leasing Corp.
Nebraska Leasing Co.
Newport Leasing Corp.
North Carolina Leasing Co.
Northwestern Leasing Corp.
Oak Leasing Co.
Ocean Leasing Corp.
Oxford Leasing Corp.
Panama Leasing Corp.
Pennsylvania Leasing Corp.
Peru Leasing Co.
Plymouth Leasing Corp.
Pontiac Leasing Corp.
Portland Leasing Corp.
Purdue Leasing Corp.
Queens Leasing Corp.
Regent Leasing Corp.
Riviera Leasing Corp.
Road Leasing Corp.
Rome Leasing Corp.
Surf Leasing Corp.
Syracuse Leasing Corp.
Town Leasing Corp.
Uess Leasing Corp.
Utah Leasing Co.
West Point Leasing Corp.
Westport Leasing Corp.
Wisconsin Leasing Co.
Wyoming Leasing Co.
Yaille Leasing Corp.

City of Rochester, County of Erie and City of Buffalo v.
International Pipe and Ceramics Corporation, et al.,
Civil Action No. 68-1212

II.   Intervenor Plaintiffs in City of New
York v. International Pipe and Ceramics
Corporation, et al., Civil Action No.
1698

State of Alaska
City of Tampa
City of Blaine
Village of Circle Pines
City of Cleveland
Allegheny County
City of Philadelphia
Board of County Road Commissioners of the County of Wayne
Allegheny County Sanitary Authority
School District of Philadelphia
City of Detroit
City of Pittsburgh
State of Ohio
County of Summit
Passaic Valley Water Commission
City of Buffalo
County of Erie
City of Hastings
City of Rochester
Commonwealth of Pennsylvania
State of Michigan
Commonwealth of Massachusetts
City of Madison Heights
Dade County Board of Public Instruction

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

MAY 2 3 1969

PATRICIA D. WILT
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

MULTIDISTRICT PRIVATE CIVIL TREBLE DAMAGE ANTITRUST LITIGATION
INVOLVING CONCRETE PIPE

CONSENT OF TRANSFEREE COURT

The United States District Court for the Eastern District
of Pennsylvania does hereby consent to the assignment of the
cases involved in the above-described litigation to the
Honorable John Morgan Davis for coordinated or consolidated
pretrial proceedings pursuant to 28 U.S.C. §1407.

_____
John W. Lord, Jr.
Chief Judge

Date: _4/25/69_____

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
DISTRICT LITIGATION
FILED

JUn 20 1969

PATRICIA D. WILT.
CLERK

IN RE "EAST OF THE ROCKIES" CONCRETE   )
PIPE ANTITRUST CASES                   )

DOCKET NO. 12

CONCURRING OPINION

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
WILLIAM H. BECKER, JOSEPH S. LORD, III, EDWIN A. ROBSON,
STANLEY A. WEIGEL, AND EDWARD WEINFELD, JUDGES OF THE PANEL

WEIGEL, J., Concurring

The record in this matter makes it clear that a very
substantial amount of discovery in each case will be pertinent
only to those cases brought in the same district. This accen-
tuates the question as to whether transfer for coordinated or
consolidated pretrial proceedings will, in fact, "be for the
convenience of parties and witnesses and will promote the just
and efficient conduct of such actions." 28 U.S.C. § 1407. If
we are to order transfer, the statute requires us to determine
that the answer to that question, including each of its four
elements, is in the affirmative.

The cases here involve non-pressure pipe for sewers and
culverts. Because of the difficulty of transporting such pipe
and because of the ease of entry into the industry, non-pressure
pipe is sold in distinctly local markets by competitors with
plants in those areas. Only two defendants, Interpace and

Martin Marietta, sold such pipe throughout the area "East of
the Rockies."  Martin Marietta had 67 plants in the area;
Interpace, 36 permanent plants and 16 temporary ones.  All the
plaintiffs allege that these two defendants conspired to fix
prices and to allocate markets throughout the region, and imple--
mented their scheme through various local conspiracies.

Plainly, then, the cases do present some common questions
of fact, i.e., those concerning region-wide industry conditions
as well as concerning the existence and local effect of the
alleged broad conspiracy between Interpace and Martin Marietta.
Even so, much--probably most--of the pretrial discovery and
proceedings will concern local witnesses, local records and
local aspects of the alleged conspiracies.  Such matters are
best handled by the local United States District Courts.

If the statute required _all_ pretrial proceedings to be
conducted by the transferee court, then the case against ordering
transfer would be compelling.  However, it is manifest from the
statute and its legislative history that the Panel may order
remand to the transferor courts for local discovery.  Subsection
(a) of 28 U.S.C. § 1407 provides, in part, that "[e]ach action
so transferred shall be remanded by the Panel at _or before_ the
conclusion of such [joint] pretrial proceedings to the district
from which it was transferred .... "  (Emphasis added.)  The
Judiciary Committee of the House of Representatives observed
with regard to subsection (a):

> [I]n most cases there will be a need for
> local discovery proceedings to supplement

> coordinated discovery proceedings,
> and ... consequently remand to the
> originating district for this pur-
> pose will be desirable.

H.R. Rep. No. 1130   90th Cong., 2d Sess. 4 (1968)

This is not to say that the provisions for remand justify anything less than the most careful assessment of the pros and cons of transfer.  The statutory objectives are not necessarily served by requiring joint pretrial whenever some--even many-- questions of fact are common to a large number of cases.  In some such cases, if not in these at hand, coordination and consolidation may impair, not further, convenience, justice and efficiency.  To put it in other words, neither the convenience of witnesses and parties nor the just and efficient conduct of actions are served, _ipso_ _facto_, by transfer just because there are common questions of fact in the civil actions involved.

There are a number of **inherent** inconveniences in transfers for coordinated or consolidated pretrial.  Some plaintiffs are temporarily deprived of their choices of forum and some defen- dants may be forced to litigate in districts where they could not have been sued.  Considerable time and trouble are involved in the sheer mechanics of transferring and remanding.[1]   After transfer, the process of segregating the pretrial matters which should be remanded for handling by the transferor courts may be time-consuming as well as subject to reasonable disagreement. Since remand must be by order of the Panel, the Panel may have to hold further hearings to resolve disagreements among the parties.

- 3 -

The basic question before the Panel in each proceeding looking to coordinated or consolidated pretrial is, then, whether the objectives of the statute are sufficiently served to justify the necessary inconveniences of transfer and remand. Many factors are relevant to the answer. Some will be applicable to all proceedings under the statute; some will not. Some will count heavily in some proceedings; lightly in others. It will be useful--for illustration, if nothing more--to articulate some of these considerations.

How many common questions of fact are there? [2] What is their nature? [3] How many cases are presently and prospectively involved? [4] What is the geographical location of the districts in which the cases pend? [5] If it is anticipated that further cases will be filed, in what districts? [6] Who are the principal witnesses in the cases and where do they reside? What detriment, financial or otherwise, will be imposed upon any of the parties by ordering transfer? [7] Will transfer result in a substantial saving of duplicative work? [8] Will transfer usefully avoid conflicting rulings in the pretrial proceedings of the cases involved? [9] Can many of the advantages of transfer be worked out by cooperation among counsel _without_ transfer? [10] Are pretrial proceedings already far along in any one or more of the cases? [11] Will transfer hasten or delay progress in the cases? [12] What is the availability of a judge or judges in the proposed transferee court or courts? Will the advantages of transfer overcome the normal desirability of having the same

- 4 -

judge who conducts the trial also conduct pretrial proceedings?
Will transfer impede or promote the prospect of settlements?
Will transfer serve any ulterior motive of any party or parties,
such as forum-shopping?  If class actions are involved, will
transfer make for complexity or for simplification? [13]   Will
transfer unjustly delay or deny any party's right to provisional
remedies such as injunctive relief?  What is the status and
possible effect of any appeals pending in any of the cases? [14]
Will transfer operate to eliminate or avoid an undesirable
multiplicity of appeals on similar issues?

In evaluating such of the foregoing considerations as are
relevant to this proceeding, the balance does seem very close
to me.  Notwithstanding the conceded common questions of fact
and the anticipated advantages of joint pretrial, the counter-
vailing considerations here are fairly strong.  To begin with,
there are the  inherent  inconveniences referred to above.  In
addition, the indications are that there will be genuine finan-
cial hardship upon a number of small defendants, that much of
the saving of judicial time through transfer will be offset by
the time required for segregation of local from common issues,
and that the advantage of having all pretrial proceedings con-
ducted by the trial judge will be lost in all transferred cases.
Moreover, since a great number of the plaintiffs are represented
by the same counsel, the opportunity exists for gaining many of
the advantages of transfer through informal cooperation.  However,
I am not convinced that these factors weighing against consolidated

- 5 -

or coordinated pretrial sufficiently tip the scale to require dissent from the decision of the Panel.

<u>FOOTNOTES</u>

1.  In the proceeding at bar, for instance, a total of 24 cases
    must be transferred to the Eastern District of Pennsylvania
    from five different district courts.  The <u>Manual for Clerks</u>
    circulated by the Panel indicates that the most efficient
    procedure would be as follows:  Upon receiving the Panel's
    order of transfer, the clerk of the transferee court transmits
    a certified copy thereof to the clerks of the transferor courts.
    After receiving and filing this order, each transferor clerk
    makes an appropriate entry on the docket sheet of each affected
    case and then forwards to the transferee court the files,
    records, and a copy of the docket sheet of each transferred
    case.

    The transferee clerk usually maintains a master docket sheet
    for all transferred cases, individual docket sheets for each
    such case and a complete combined pretrial file for each trans-
    feror court.  Thereafter, copies of all motions, depositions,
    exhibits, and other pretrial papers are included in each com-
    bined district file.  Notices, orders and pleadings must be
    served on all counsel for all parties, unless alternative
    arrangements can be agreed upon.

    Motions for remand may be initiated by any party, the transferor
    or transferee courts or the Panel.  Only the Panel has the power
    to order a remand.  Hearings may be necessary.  Orders of remands
    must be transmitted to each transferor court by the transferee
    court and appropriate entries must be made on all the afore-
    mentioned docket sheets.  The individual case file, a docket
    sheet for each remanded case, a copy of the master docket sheet
    and the combined district file must then be transmitted back to
    the appropriate district court.  If some but not all of the cases
    from a specific district are remanded, then copies of all subse-
    quent motions, orders and other filings must be sent to the
    transferor court for inclusion in the combined district file.

2.  See <u>In re Plumbing Fixture Cases</u>, 295 F. Supp. 33 (Jud.Pan.Mult.
    Lit. 1968).

3.  See <u>In re Air Crash Disaster at Greater Cincinnati Airport
    (American Airlines)</u>, 295 F. Supp. 51 (Jud.Pan.Mult.Lit. 1968).

4.  See <u>In re Scotch Whiskey Antitrust Litigation</u>, ___ F. Supp. ___
    (Jud.Pan.Mult.Lit. 1969).

5.  See <u>In re Library Editions of Children's Books</u>, 297 F. Supp. 385
    (Jud.Pan.Mult.Lit. 1968).

- 7 -

6. See In re Air Crash Disaster at Greater Cincinnati Airport (TWA), ___ F. Supp. ___ (Jud.Pan.Mult.Lit. 1968).

7. See In re Library Editions of Children's Books, supra.

8. See In re Gypsum Wallboard Antitrust Cases (Roundy v. Kaiser Gypsum), ___ F. Supp. ___ (Jud.Pan.Mult.Lit. 1969).

9. See In re Fourth Class Postage Regulations, ___ F. Supp. ___ (Jud.Pan.Mult.Lit. 1969).

10. See In re Scotch Whiskey Antitrust Litigation, supra.

11. See In re Protection Devices and Equipment and Central Station Protection Service Antitrust Cases, 295 F. Supp. 39 (Jud.Pan. Mult.Lit. 1968).

12. See In re Air Crash Disaster at Falls City, Neb. on Aug. 6, 1966, ___ F. Supp. ___ (Jud.Pan.Mult.Lit. 1969).

13. See In re Plumbing Fixture Cases, ___ F. Supp. ___ (Jud.Pan. Mult.Lit. Dec. 27, 1968).

14. See In re Mid-Air Collision Near Hendersonville, N. C. on July 19, 1967, 297 F. Supp. 1039 (Jud.Pan.Mult.Lit. 1969).